```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF KENTUCKY
```
                              **LEXINGTON**

EARL ESTES,                        )
                                   )
     Plaintiff,                    )
                                   )   Civil Action No. 5:06-9-JMH
v.                                 )
                                   )
JAMES ED WORLEY, et al.,           )
                                   )   **MEMORANDUM OPINION AND ORDER**
     Defendants.                   )

                    **      **      **      **      **

This matter is before the Court on Defendants' motion for partial summary judgment on all claims filed under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq.* [Record No. 15]. Defendants also ask this Court to decline to exercise supplemental jurisdiction on Plaintiff's remaining claims if summary judgment is granted on the RICO claims. The parties have fully briefed the issue, and this matter is now ripe for review.

## I. BACKGROUND

In November 2001, Plaintiff Earl Estes and his stepfather Elmo Nickell (the "landowners") were the fee simple owners of equal undivided interests in twenty-seven acres of real estate in Madison County, Kentucky. The property was located at the intersection of Highway 52 and the Eastern Bypass in Richmond, Kentucky. Defendants James Ed Worley and Allen Grant, Jr. (the "developers") approached Estes and Nickell, proposing to develop the property commercially and pay all costs of development in exchange for one-

half interest in the property.

On November 2, 2001, the landowners and the developers executed a written "JOINT VENTURE AGREEMENT" (the "original agreement"). The original agreement provided, *inter alia*, that the developers would contribute money to subdivide and develop the property in exchange for a one-half undivided interest in what was to be a forty-six lot development (the "development"). Following the agreement's execution, Estes and Nickell conveyed a one-half interest in the property to Worley and Grant.

The parties executed several addendums to the original agreement. In the first addendum, the landowners consented to an assignment of all the developers' rights under the original agreement to Defendant WG&T Builders, Inc. ("WG&T"), a Kentucky corporation owned in part by the developers.

Pursuant to a second addendum, WG&T received the full interest in lots 21-46, Estes and Nickell received full interest in lots 10-20, and the parties retained a joint interest in lots 1-9. In a third addendum, Estes and Nickell agreed to convey lot 20 of the development to WG&T in exchange for lots 15 and 16 of Highland View subdivision, a Madison County development owned by WG&T, and to convey a one-half interest in lots 10-17 of the development for a price set forth in an appraisal performed by Atlantic Appraisal.

On or about November 16, 2001, the parties also executed a mortgage with Peoples Bank & Trust Company. The mortgage secured

2

a $1.1 million loan to pay for development costs and included future advance provisions allowing a maximum total encumbrance of $8 million on the property.

On November 27, 2002, Estes and Nickell sued Worley, Grant, and WG&T, as well as People's Bank & Trust Co., in Madison Circuit Court, alleging fraud, breach of contract, and other causes of action. The suit alleged that Worley, Grant, and WG&T (1) sold and removed topsoil from the property without accounting to Estes and Worley for their rightful share; (2) used only Estes' and Nickell's property as collateral for the mortgage on the entire development and used Estes and Nickell as guarantors of the debt without their consent; (3) misappropriated $50,000 of the borrowed funds to pay for construction activities at other locations; and (4) at least twice misrepresented the appraised value of lots in the development in order to induce Estes and Worley to enter into conveyance agreements favorable to Worley, Grant, and WG&T.

The state court lawsuit settled in October 2003. In a settlement agreement signed October 31, 2003, each party agreed to "forever and fully release the other from and against any and all claims, demands, causes of action, and damages, arising from acts or omissions occurring prior to" the date of the settlement agreement. Pursuant to the agreement, the lawsuit was dismissed without prejudice.

After the settlement, Estes, Nickell, and WG&T continued to be

joint owners of commercial lots 1 through 9 of the development. Elmo Nickell died on February 15, 2004, leaving all of his interest in the property to the plaintiff.

These lots were renumbered as Lots 4A, 4B, 4C, 5A, 5B, 5C, 5D, 5E, and 5F of a development known as the "Paddlefoot Center." The sale of seven of these nine lots is the subject of Plaintiff's current lawsuit. The chronology of the transfer of all nine lots is as follows:

> **November 18, 2003:** Lot 4A sold to Evans Tire & Auto Care of Richmond for $250,000.
> **January 9, 2004:** Lot 4C sold to Defendant RJD Enterprises, LLC ("RJD") for $250,000.
> **January 28, 2004:** Lot 4B sold to DQF, Inc. (Dairy Queen) for $250,000.
> **September 24, 2004:** Lots 5A and 5D sold to AGAM, LLC ("AGAM") for $250,000 each.
> **January 28, 2005:** Lots 5B, 5C, 5E, and 5F[1] sold to RJD for $750,000 total. As of this date, Estes and WG&T had sold all nine lots.
> **March 9, 2005:** RJD sold Lots 5C and 5F to Cumberland Valley National Bank & Trust Co. for $535,000, a profit of at least $285,000.
> **April 1, 2005:** AGAM sold lots 5A and 5D to RJD for $625,000.
> **June 27, 2005:** RJD sold lot 5A to TDT Investments for $400,000, a profit of $87,500.
> **April 21, 2006:** RJD sold lot 5B to Sandwith for $462,500, a profit of at least $212,500.

Wendell Combs, the manager of RJD, began negotiations to buy lot 4C in December 2003. All negotiations with Combs were

---

[1] According to the defendants, lot 5F was essentially valueless. Plaintiffs claim it had some value, but, at the very least, lots 5B, 5C, and 5E were sold for $250,000 and lot 5F was sold for $0.

4

conducted by Worley and Grant. Unbeknownst to Estes, Worley and Grant were going to be partners with Combs in a company being formed to make the purchase. This company, RJD, was formed in late December 2003. RJD is a manager-managed Kentucky limited liability company. Wendell Combs is the manager, and Grant, Worley, and Combs are the members. According to the plaintiff, Grant and Worley concealed their ownership interest in RJD and told him that Combs owned the company. Five of the nine lots were sold to RJD.

AGAM is a Kentucky limited liability company owned by Dr. Adrienne Millet and Allen D. Grant, Sr., Defendant Grant's father. Allen Grant, Sr. is also the registered process agent for AGAM. According to the plaintiff, Worley and Grant told him that AGAM was owned by Dr. Adrienne Millet and concealed Allen Grant, Sr.'s ownership.

Plaintiff claims that Grant and Worley induced him to sell seven lots to AGAM and RJD at prices substantially less than their fair market value so that they could reap a hidden profit. He claims that the defendants misrepresented the value of the lot. Plaintiff accepted Worley and Grant at their word because, based on the aforementioned concealment and misrepresentations, he assumed that the sales were arm's length transactions.

Plaintiff filed this suit against Defendants Worley, Grant, WG&T, and RJD on January 13, 2006, alleging civil racketeering, conspiracy to commit civil racketeering, state law fraudulent

5

misrepresentation, and state law fraudulent concealment. This Court has federal question jurisdiction over RICO claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

Defendants filed their motion for partial summary judgment on the RICO claims on May 24, 2006 [Record No. 15]. Plaintiff filed his response on August 10, 2006 [Record No. 30],[2] and Defendants replied on August 23, 2006 [Record No. 35]. This matter is now ripe for review.

## II. STANDARD OF REVIEW

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(c). "Upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to

---

[2] The Defendants have filed a motion to strike the plaintiff's response to their motion for partial summary judgment [Record No. 34]. As grounds for this motion, the defendants argue that the plaintiff did not comply with his Federal Rule of Civil Procedure 26(a) ("Rule 26(a)") disclosure obligations. As an exhibit to his response, the plaintiff provided a tape recording of several conversations that allegedly contradict Defendants' deposition testimony. Defendant claims this is substantive evidence that was required to be disclosed pursuant to Rule 26(a). Plaintiff claims it was not since it is impeachment evidence only. The Court passes ruling on defendant's motion to strike because its summary judgment disposition of the RICO claims renders the motion moot.

withstand a motion for a directed verdict, particularly where there has been an opportunity for discovery." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (internal citations omitted). In considering this motion, the Court must construe the facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III. DISCUSSION

**A. Plaintiff's RICO Claims**

In Count I of his complaint, Plaintiff alleges violations of subsections (a), (b), (c), and (d) of 18 U.S.C. § 1962, brought pursuant to 18 U.S.C. § 1964(c). Plaintiff's RICO claims require the existence of an enterprise and a pattern of racketeering activity. 18 U.S.C. § 1962. It is unlawful to invest any income derived from a pattern of racketeering activity in the acquisition, establishment, or operation of any enterprise engaged in interstate or foreign commerce. *Id.* It is also unlawful to acquire or maintain an interest in any enterprise engaged in foreign commerce through a pattern of racketeering activity. *Id.* Finally, it is unlawful for any person employed by or associated with any enterprise engaged in interstate or foreign commerce to participate in that enterprise's affairs through a pattern of racketeering activity. *Id.*; *Smallwood v. Jefferson County Government*, 743 F. Supp. 502, 504 (W.D. Ky. 1990) (citation omitted). Section 1962(d)

7

additionally makes it unlawful to conspire to violate any of these provisions. Since the evidence is insufficient to establish that a pattern of racketeering activity exists, the defendants are entitled to judgment as a matter of law on the plaintiff's RICO claims.

*1. Plaintiff's Pre-Settlement Allegations*

This Court cannot consider any conduct prior to the parties' October 31, 2003, settlement agreement. The settlement agreement unequivocally stated that "the Owners and Developers do each forever and fully release the other from and against any and all claims, demands, causes of action, and damages, arising from acts or omissions occurring prior to the date of their respective signature hereto." Therefore, the plaintiff cannot now predicate a RICO claim on these events.

*2. Defendant's Conduct During the Sale of the Remaining Nine Lots from January 2004 to January 2005 is not a Pattern of Racketeering Activity.*

In *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989), the Supreme Court defined the "pattern" requirement. Proving a pattern requires showing that the predicate racketeering acts "are related" and that they "amount to or pose a threat of continued criminal activity." *Id.* at 239.

The relationship between the acts may be shown by "criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by

distinguishing characteristics and are not isolated events." *Id.* at 240 (citations omitted).

Continuity can be shown either through a "closed period of repeated conduct" or through "past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. A party alleging closed-period continuity must show "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* at 242.

The Sixth Circuit has adopted a multifactor test to determine whether a RICO pattern exists, examining such factors as

>  (1) the length of time the racketeering activity existed;
>  (2) the number of different schemes (the more the better);
>  (3) the number of predicate acts within each scheme (the more the better);
>  (4) the variety of species of predicate acts (the more the better);
>  (5) the distinct types of injury (the more the better);
>  (6) the number of victims (the more the better); and
>  (7) the number of perpetrators (the less the better).

*Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1110 (6th Cir. 1995).

In his complaint, the plaintiff alleged the following predicate acts of racketeering that occurred after October 2003:

>  (1) On December 30, 2003, Defendants mailed or caused to be mailed documents to and from the Kentucky Secretary of State's Office for the formation of RJD Enterprises, LLC, for purposes of defrauding the Plaintiff.
>  (2) Prior to and on or about January 9, 2004, defendants

9

used the telephone to call the plaintiff and induce him to sell Lot 4C for substantially less than its fair market value.  The United States mail was also used in this transaction and subsequent related transactions.
(3) On or about May 21, 2004, Defendants mailed or caused to be mailed documents to and from the Kentucky Secretary of State's Office for the formation of AGAM.
(4) The defendants used telephone to induce the plaintiff to sell Lots 5A and 5D for substantially less than their value on September 28, 2004.  The United States mail was also used in this transaction and/or subsequent related transactions.
(5) The defendants used the telephone to induce the plaintiff to sell lots 5B, 5C, 5E, and 5F for substantially less than their value on January 28, 2005. Defendants also used the United States mail for this transaction and/or subsequent related transactions.
(6), (7), and (8) RJD and AGAM used the United States mail to facilitate their sale of the property they acquired to other companies, the last transaction being on June 27, 2005.  They failed to account to the Plaintiff for any of their profits.
(9) RJD intends to develop Lot 4C and is developing Lots 5D and 5E.  It will receive additional income from these developments but will not account to the plaintiff for its profits.  The United States mail and wire telephone communications will presumably be used in these transactions.

Allegations 6, 7, 8, and 9 cannot be considered part of the ongoing scheme of racketeering.  They all occurred after the plaintiff had already sold all his property to RJD and AGAM. "'When the Supreme Court spoke of the threat of repetition, it was referring to the threat of repeated *victimization* . . . , not merely the retention of the ill-gotten fruits of previous crimes.'" *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 670, 679 (E.D. Mich. 1996) (citations omitted).  The current case, if Plaintiff's allegations are true, is analogous to the thief who steals $100 and then spends it a dollar at a time.  *See Id.*  The

defendants have only victimized the plaintiff once, at the time the alleged fraud occurred.  The plaintiff does not suffer any new loss upon redisposition of the land.  He no longer owns it.

Even without considering the sufficiency of the evidence in support of each of these alleged predicate acts, the plaintiff's allegations cannot support finding a pattern of racketeering.  The disposition of the plaintiff's property occurred over the course of a year.  The Supreme Court has observed that the number of "schemes" depends on the "level of generality with which one views the alleged criminal activity," *Moon v. Harrison Piping Supply*, 375 F. Supp. 2d 577, 601 (E.D. Mich. 2005) (citing *H.J., Inc.*, 492 U.S. at 241), but, even at the highest level of generality, the defendants did not engage in a very large number of schemes, since there were only nine parcels of property to sell.  For each and every scheme, the defendant was only able to allege two types of predicate acts: mail fraud and wire fraud.  At most, there were only two victims, Estes and Nickell.  There is also only one distinctive type of injury, the sale of each property at below market value.  While "there is no per se rule that a weakness in one area is dispositive," *Columbia Natural Resources*, 58 F.3d at 1111, the plaintiff's allegations are weak in five of the seven areas (all but number of perpetrators and possibly length of time). There is no genuine issue of material fact as to the existence of a pattern of racketeering, and defendant is therefore entitled to

11

judgment as a matter of law on Plaintiff's RICO claims in Count I of his amended complaint.

**B.     Supplemental Jurisdiction**

Pursuant to 28 U.S.C. § 1367(c), this Court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction. Plaintiff's RICO claim was the sole basis for federal jurisdiction in this action. Section 1367(d) provides that the statute of limitations is tolled while a state law claim is pending in this Court under supplemental jurisdiction and for an additional thirty days after it is dismissed unless state law provides a longer tolling period. Disposition of the remaining claims will require application of Kentucky's common law on contracts, fraud, and fiduciary duties. Accordingly, this Court deems it appropriate to decline supplemental jurisdiction so that the plaintiff may file his claims in Kentucky.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED:**

(1) That Defendants' motion for partial summary judgment [Record No. 15] be, and the same hereby is, **GRANTED.**

(2) That Plaintiff's RICO claims be, and the same hereby are, **DISMISSED WITH PREJUDICE.**

(3) That Plaintiff's remaining claims be, and the same hereby are, **DISMISSED WITHOUT PREJUDICE.**

(4)     That Defendants' motion to strike plaintiff's response [Record No. 34] be, and the same hereby is, **DENIED AS MOOT.**

This the 14th day of September, 2006.



Signed By:
*Joseph M. Hood*
United States District Judge